Slip Op. 13 - 83

**UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| ZHAOQING NEW ZHONGYA ALUMINUM CO., LTD. and ZHONGYA SHAPED ALUMINUM (HK) HOLDING LTD., <br><br>    Plaintiffs, <br><br>    and <br><br>EVERGREEN SOLAR, INC., <br><br>    Plaintiff-Intervenor, <br><br>    v. <br><br>UNITED STATES, <br><br>    Defendant, <br><br>    and <br><br>ALUMINUM EXTRUSIONS FAIR TRADE COMMITTEE, <br><br>    Defendant-Intervenor. | **PUBLIC VERSION** <br><br> Before: Donald C. Pogue, <br>       Chief Judge <br><br> Court No. 11-00181 |

<u>**OPINION**</u>

[Commerce's final determination is AFFIRMED IN PART and REMANDED IN PART]

Dated: June 27, 2013

    <u>Peter J. Koenig</u>, Squire Sanders LLP, of Washington, DC, for Plaintiffs Zhaoqing New Zhongya Aluminum Co., Ltd, and Zhongya Shaped Aluminum (HK).

Craig A. Lewis and Theodore C. Weymouth, Hogan Lovells LLP, of Washington, DC, for the Plaintiff-Intervenor, Evergreen Solar, Inc.

Tara K. Hogan, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant. With her on the briefs were Stuart F. Delery, Acting Assistant Attorney General, Jeanne E. Davidson, Director, and Reginald T. Blades, Jr., Assistant Director. Of counsel on the briefs was Joanna Theiss, Attorney, Office of the Chief Counsel for the Import Trade Administration, U.S. Department of Commerce, of Washington, DC.

Alan H. Price, Derick G. Holt, Laura El-Sabaawi, Maureen E. Thorson, Robert E. DeFrancesco, III, Wiley Rein LLP, of Washington, DC and Stephen A. Jones, Gilbert B. Kaplan, and Daniel L. Schneiderman, King & Spalding LLP, of Washington, DC, for Defendant-Intervenor, Aluminum Extrusions Fair Trade Committee.


**Pogue, Chief Judge**: In this action, Plaintiffs, producers and importers of extruded aluminum seek review of two aspects of Commerce's calculations of countervailing duties on certain aluminum extrusions from the People's Republic of China ("PRC" or "China"). See Aluminum Extrusions from the People's Republic of China, 76 Fed. Reg. 18,521 (Dep't Commerce Apr. 4, 2011) (final affirmative CVD determination) ("Final Determination") and accompanying Issues and Decision Memorandum ("I&D Memo"). Plaintiffs first challenge Commerce's inclusion of import duties in its calculation of a world market price for use as the benchmark for determining the benefit received from government-supplied primary aluminum. Plaintiffs also challenge Commerce's finding that a plot of land acquired by New Zhongya

(hereinafter "Zhongya") was, at the time of acquisition, comparable to a fully developed Thai industrial park. For the reasons stated below, the court finds that Commerce's inclusion of import duties was in accordance with law, but that Commerce's finding that the land leased by Zhongya in 2006 was, at the time the land use rights were acquired, comparable to a fully developed industrial park was not supported by a reasonable reading of the evidence of record. Therefore, Commerce's Final Determination is affirmed in part and remanded in part.

   The court has jurisdiction pursuant to 28 U.S.C. § 1581(c).

## BACKGROUND

  In its 2010 investigation of certain extruded aluminum products from the PRC, Commerce determined that countervailing duties ("CVD"s) were appropriate to offset subsidies provided to Chinese producers of extruded aluminum. See Aluminum Extrusions from the People's Republic of China, 76 Fed. Reg. 30,653 (Dep't Commerce May 26, 2011) (CVD order). Specifically, during the investigation, Commerce found that the respondents received financial contributions in the form of primary aluminum inputs supplied by companies that were government authorities. I&D Memo cmt. 21 at 96. In deciding whether these financial contributions conferred a benefit, Commerce selected an

appropriate benchmark against which to measure the adequacy of the price paid for government-supplied primary aluminum.  Id. When selecting the appropriate benchmark, Commerce found that actual transaction prices within the PRC were "significantly distorted" due to a high percentage of state owned enterprises in the market, and chose to use the world market price as the appropriate benchmark.  Id.  In calculating the world market prices, and in accordance with its regulations, Commerce included applicable delivery charges and import duties.  19 C.F.R. § 351.511(2)(iv).  Plaintiffs challenge this calculation, arguing that the inclusion of import duties was improper because Plaintiffs paid no duties on their imports of primary aluminum from Hong Kong.

　　　Commerce also investigated allegations that China provided land-use rights for less than adequate renumeration to aluminum extrusion producers and concluded that provision of such land-use rights constituted a countervailable subsidy.  I&D Memo cmt. 24.  As with the supplies of primary aluminum, Commerce sought to find an appropriate benchmark to determine whether the respondents received any benefit.  Commerce selected the purchase price of a fully developed industrial park in Bangkok, Thailand, as the benchmark and found that when compared to a land-use lease signed by Zhongya in 2006, Zhongya received a benefit.  Id. at cmt. 24.  Plaintiffs also seek judicial

review of this determination, arguing that the record as a whole shows that the price Zhongya paid in 2006 was for land that contained no infrastructure and required significant improvements before manufacturing could occur, and therefore the purchase price of a fully developed industrial park is not a comparable benchmark.  Id.

## STANDARD OF REVIEW

The court will sustain Commerce's "determination[s], finding[s], or conclusion[s]" unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i).  To be in accordance with law, the agency's decision must be authorized by the statute, and consistent with the agency's regulations. See, e.g., Hontex Enter., Inc. v. United States, 27 CIT 272, 293, 248 F. Supp. 2d 1323, 1340 (2003).  When reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is reasonable given the record as a whole. Nippon Steel Corp. v. United States, 458 F.3d 1345, 1350-51 (Fed. Cir. 2006).

## DISCUSSION

I. Import Duties

Plaintiffs first challenge Commerce's inclusion of import duties in its benchmark calculation when it investigated Chinese producers imports of primary aluminum. Specifically, Plaintiffs assert that because they paid no import duties on imports of primary aluminum from Hong Kong, Commerce's inclusion of import duties improperly inflates the benchmark value used to determine the value of this benefit.[2] Plaintiffs claim that when, as here, Commerce uses world market prices, it errs in including import duties in its calculations.

19 C.F.R. § 351.511(a)(2) describes Commerce's methodology for calculating benefits received. Generally, Commerce compares the government price to the actual market price for the good or service received. 19 C.F.R. § 351.511(a)(2)(i). This is commonly referred to as a "tier-one benchmark." See also I&D Memo cmt. 21 at 96 (noting that a tier-one benchmark is preferred to a tier-two benchmark). However, should Commerce determine, as it did here, that "there is no usable market-determined price" to use as the benchmark, then it proceeds to the second tier benchmark, the world market

---

[2] Plaintiffs also claim that Commerce's inclusion of [[
        ]] was improper [[
        ]] and therefore not supported by substantial evidence. However, Commerce notes correctly that Plaintiffs failed to raise this issue at the administrative level and thus have not exhausted their administrative remedies on this issue. See Dorbest, Ltd. v. United States, 604 F.3d 1363, 1375 (Fed. Cir. 2010).

price. See 19 C.F.R. § 351.511(a)(2)(ii); I&D Memo cmt. 20 at 94 (deciding that distortion in the PRC market makes tier-one pricing unusable as a benchmark). The regulation is specific in stating that when using the world market price, Commerce is to include delivery charges and import duties in its calculations. 19 C.F.R. § 351.511(a)(2)(iv) ("[Commerce] will adjust the comparison price to reflect the price that a firm actually paid or would pay if it imported the product. This adjustment will include delivery charges and import duties.")

   Here, Commerce found that the "market for primary aluminum is significantly distorted by the presence of companies determined to be government authorities" and that the preferred tier-one benchmark was therefore unusable. I&D Memo cmt. 21 at 94, 96. Pursuant to its regulation, Commerce then proceeded to use tier-two pricing, the world market price, as a benchmark price and adjusted it to include delivery charges and import duties. I&D Memo cmt. 20 at 94; 19 C.F.R. § 351.511(a)(2)(iv).

   Plaintiffs challenge the inclusion of import duties, claiming that the regulation calls for adjusting the tier-two benchmark to reflect what a firm actually paid or would pay, and that because they paid no import duties, the tier-two benchmark impermissibly includes such duties. But Plaintiffs' understanding of the regulations is flawed. As the government notes, both in its I&D Memo and before the court, Plaintiffs are

asking for a "company-specific, tier-one benchmark" but have failed to challenge Commerce's finding that tier-one pricing is unavailable. Def.'s Opp'n to Pls.' Mot. For J. on the Agency R., ECF No. 53 at 11-12 ("Gov't Br."). Therefore, Commerce's decision that tier-one pricing is unusable, and the consequent use of the tier-two pricing, the world market price, as a reasonable benchmark is well grounded in the applicable regulations. Accordingly, because the world market price by regulation must include import duties, Commerce's decision to include such import duties in its calculation of the benchmark is reasonable and in accordance with law.[3] See Hontex, 27 CIT at 292-93, 248 F. Supp. 2d at 1340-41.

II. Land Use Benchmark

Plaintiffs next claim that Commerce's selection of a fully developed industrial park purchase price in Bangkok, Thailand as the land purchase price benchmark is not comparable to Zhongya's 50 year lease of wholly undeveloped land.

Plaintiffs refer to numerous citations to the record which show that, from the beginning of the investigation, it has

---

[3] Plaintiffs also challenge the applicable regulation as impermissibly violating the statute, 19 U.S.C. § 1677(5)(E). However, not only is this argument barely set forth in Plaintiffs' brief, Plaintiffs failed to raise the issue at the administrative level, and it is therefore not appropriate for the court to consider it. See Dorbest, 604 F.3d at 1375.

maintained that the land leased by Zhongya was completely undeveloped and required significant development, such as infrastructure for water and electricity, before it could be used as a production facility.  See Pls.' Mot. For J. on the Agency R., ECF No. 44 at 5 n.11 ("Pls.' Br.")(listing extensive record citations to documents showing that Zhongya developed the land).  Indeed, the lease for Zhongya's land contains an article providing timelines for Zhongya to begin construction and provides for repossession should Zhongya fail to do so in a timely manner.  Zhongya Supplemental Questionnaire Resp. (Aug. 6, 2010), Admin. R. Con. Doc. 21 [Pub. Doc. 120] at 297, Exhibit 15.  Furthermore, the lease states that Zhongya is "solely responsible for the construction and improvement of the supporting facility of sewage and drainage" on the land.[4]  Id.

      Commerce fails to squarely address Plaintiffs' argument that the land it leased was completely undeveloped in 2006 and required significant improvement.  In the I&D Memo, Commerce cites a promotional website provided by Petitioners on July 13, 2010, and claims that the data on the website dates

---

[4] Plaintiffs have also submitted a copy of a construction contract which they assert is for the construction of infrastructure such as electricity, water, and gas.  Pls.' Br. at 5 n.11 (citing Zhongya Third Supplemental Questionnaire Resp. (Oct. 13, 2010), Admin. R. Con. 48 [Pub. Doc. 233], Exhibit 5).  Commerce has failed to address the construction contract or the terms of the land lease in both its court briefings and the I&D Memo.

back to 2004.  I&D Memo cmt. 24 at 106.  The website exists to promote the region in which Zhongya leased its land.  In its brief to the court, Commerce notes that the excerpted pages have a note stating, "Copyright 2004 ZhaoQing Government," and the website currently describes the region as an "industrial estate which has been well-equipped with electricity, water, cable, road {sic}. . . ."  Gov't Br. at 18 (citing Petitioner's First New Subsidy Allegations (Jul. 13, 2010), Pub. Doc. 91, Exhibit 1 at 12).  This argument completely misses the point.  First, promotional websites which exist to advertise and attract business are not held to any standards of accuracy and fact and do not carry the same weight as, for example, findings that arise from a thorough administrative investigation.[5]  See Constantine Polites v. United States, __ CIT __, 780 F. Supp. 2d 1351, 1356 n.11 (2011).  Because websites are fluid in nature and may be edited at any point in time with no discernable trace, a note that the pages are copyrighted 2004 does not guarantee that the information was placed there in 2004.  While it is, of course, for Commerce to decide the weight of this evidence, F. Lli De Cecco Di Filippo Fara S. Martino S.p.A. v.

---

[5] The court notes that it is possible to find websites advertising products that range from mundane health products to "petite lap giraffes," and that it is often difficult to discern what is fact and what is "mere puffery" on these promotional websites.  See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv., Inc., 911 F.2d 242, 246 (9th Cir. 1990).

United States, 216 F.3d 1027, 1032 (Fed. Cir. 2000), Commerce's weighing must not be unreasonable. Universal Camera Corp. v. NLRB, 340 U.S. 474, 477 (1951).  Second, the amenities currently advertised as available in the general region have absolutely no bearing on the condition of the specific plot as it existed when Zhongya assumed the land use rights in 2006.

Defendant-Intervenor argues that the publication date of the website is irrelevant because the website states that by "August 2005, more than 170 enterprises have found their homes in the industrial park among which 60 have gone into operation." Resp. In Opp. to Pls.' Mot. For J. on the Agency R., ECF No. 52 at 17.  Again, this argument misses the point.  Nothing in a promotional website for the general region supports a finding that the specific plot leased by Zhongya in 2006 was comparable to a fully developed industrial park in Bangkok, Thailand. Indeed, the language cited by Defendant-Intervenor, stating that 60 of 170 enterprises in that region were operational in 2005, tends to suggest that the region in 2005 was not a fully equipped industrial park allowing tenants to immediately begin manufacturing.

Commerce's sole argument concerning the specific plot leased by Zhongya also fails.  Commerce states that it "collected" photographs during verification which show power lines and a canal on or near the site.  Gov't Br. at 17

("Concerning the parcel for which New Zhongya purchased land-use rights, Commerce noted that, during verification, it collected pictures showing power lines and a canal on or near the site."); I&D Memo at 107.  Commerce does not clearly indicate the provenance of these photographs, but Plaintiffs state that they were selectively chosen from a slideshow they created to show the improvements they made to the land from 2005 to 2010.  Pls.' Br. at 7.  Plaintiffs assert that the photographs Commerce used were taken after Zhongya had completed its improvements to the land and therefore these photographs do not show the condition of the plot as it existed when Zhongya assumed the lease in 2006.  Id.  Given the record as a whole, the court is not persuaded that these photographs provide substantial evidence that the land Zhongya leased was a fully developed industrial park in 2006, or that the photographs even depict the land as it existed in 2006.

In sum, the court cannot conclude that a reasonable reading of the record as a whole supports Commerce's rebuttal of Plaintiffs' claim that the land they leased was undeveloped in 2006 and therefore not comparable to a fully developed industrial park.  Commerce relies on a 2010 screenshot of a promotional website for the region to support its claim that the plot as it existed in 2006 was a fully developed industrial park and has not placed any evidence on the record rebutting or

addressing Plaintiffs' claims that photographs showing a canal and power lines on or near the property were taken in 2010 and not 2006.  The court therefore holds that Commerce's finding that the land as it existed in 2006 was comparable to a fully developed industrial park is not supported by substantial evidence and remands for reconsideration or further explanation.[6]  See Nippon Steel, 458 F.3d at 1350-51.

### CONCLUSION

For the reasons stated above, Commerce's Final Determination is affirmed in part and remanded in part for reconsideration of its selection of a fully developed industrial park as a benchmark for the land-use rights acquired by Plaintiffs in 2006.  Commerce shall file its remand determination with the court by August 5, 2013.  The parties will have until August 19, 2013 to file comments, and Commerce has until September 2, 2013 to file a response.

It is so ORDERED.

                                                   /s/ Donald C. Pogue
                                              Donald C. Pogue, Chief Judge

Dated: June 27, 2013
      New York, NY

---

[6] Plaintiffs challenge the Thai benchmark data on other grounds, but because the court is remanding to Commerce for reconsideration, it does not reach these arguments.